**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | **CRIMINAL ACTION** |
| ) | |
| v. ) | No. 07-10221-MLB |
| ) | |
| MICHAEL L. BIGLOW, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This case comes before the court on defendant Michael Biglow's motion for acquittal or, in the alternative, a new trial. (Doc. 884). The motion has been fully briefed and is ripe for decision. (Docs. 885, 896, 898). Biglow's motion is denied for the reasons herein.

**I.   Facts and Procedural History**[1]

Biglow, along with three co-defendants, were charged in a Fifth Superceding Indictment filed on September 14, 2011. The indictment contained a total of 35 counts and forfeiture allegations. Biglow was charged in Count 1 with conspiracy to distribute 500 grams of cocaine occurring from an unknown date until September 27, 2007. No co-conspirators were identified by name in Count 1, only "other persons whose identities are both known and unknown . . . ." Biglow was also charged with five counts of using a telephone to distribute cocaine, two counts of possession with intent to distribute cocaine and two charges of an unlawful user in possession of a firearm. On March 26, 2012, the court granted in part Biglow's motion to sever. (Doc. 867).

---

[1] A more detailed discussion of the procedural history of this case, which was initially filed in 2007, can be found in this court's previous orders. See Docs. 644, 800.

The court severed Clearance Reed and Gregory Reynolds because Reed and Reynolds were not charged with conspiracy. See Doc. 867. The trial was set for April 3 with two defendants, Biglow and James Black, who was charged in a separate conspiracy count.

On April 3, the jury was empaneled. On April 10, at the conclusion of the evidence, Biglow moved for judgment of acquittal on all counts. The court granted Biglow's motion in part and entered a judgment of acquittal on both counts of being a user in possession of a firearm and one count of possession with the intent to distribute cocaine. The court then instructed the jury on the remaining seven counts. After deliberating over two days, the jury returned a verdict of not guilty on the remaining count of possession with the intent to distribute cocaine and guilty verdicts on the conspiracy and phone counts.

Biglow now renews his motion for acquittal on all counts on the basis that there was not sufficient evidence or, in the alternative, Biglow requests a new trial.

**II. Analysis**

Pursuant to Fed. R. Crim. P. 29(c), a defendant may move for judgment of acquittal after the jury has returned a guilty verdict. If a defendant offers evidence, as he did in this case, the court reviews the entire record in order to determine if there was sufficient evidence for a reasonable jury to find defendant guilty. United States v. Delgado-Uribe, 363 F.3d 1077, 1083 (10th Cir. 2004). In reviewing the evidence, the court must view all evidence in the light most favorable to the government. United States v. Swanson, 360 F.3d 1155, 1162 (10th Cir. 2004). A conviction may be reversed only

if "no reasonable juror could have reached the disputed verdict." United States v. Carter, 130 F.3d 1432, 1439 (10th Cir. 1997).

**A.   Conspiracy Count**

To prove a conspiracy, the government must show (1) that two or more persons agreed to violate the law; (2) that the defendant knew the essential objectives of the conspiracy; (3) that the defendant knowingly and voluntarily took part in the conspiracy; (4) that the conspirators were interdependent; and (5) the amount of the drugs when charged. United States v. Wright, 506 F.3d 1293, 1297-98 (10th Cir. 2007).

Biglow contends that the government did not prove beyond a reasonable doubt that an agreement existed to distribute 500 kilograms of cocaine, that Biglow entered into the agreement knowingly and that the conspirators were interdependent. Basically, Biglow's position is that he dealt only with Tyrone Andrews on two occasions as a purchaser of a total of about 6-7 ounces of cocaine.

During the trial, the government introduced recorded conversations between Tyrone Andrews and Biglow. The government also called Andrews and Abarca to testify. The evidence established that Andrews was a major dealer who received approximately five to ten kilos a week from either Jose Pizana, referred to as the "high" one in the recorded calls, or Jesus Abarca, referred to as the "fat" one. In the summer of 2007, Andrews operated out of a stash house on Ridgewood in Wichita, Kansas. Biglow came to the stash house to ask Andrews about renting the house. At that time, Biglow also wanted to purchase cocaine from Andrews. Andrews agreed to "front" Biglow a "two-piece," that is two and a half ounces. That was the first time

that Andrews sold cocaine to Biglow.  Andrews explained that he fronted the cocaine to Biglow so that Biglow could determine whether he liked the cocaine.

Andrews testified that Biglow requested kilos from Andrews at a later date but Andrews would not sell to Biglow in that quantity.  On September 13, Biglow spoke to Andrews on the phone about purchasing two "two-pieces" for a total of five ounces.  On September 17, Biglow spoke with Andrews again about purchasing "two"[2] but Andrews told Biglow that he did not have any cocaine to sell.  Andrews testified that he did have cocaine available that day but that he did not trust Biglow and did not want to sell him.  On that same call, Biglow told Andrews that his, Biglow's, customers were complaining about the quality of the cocaine he received.  The recorded calls also show that Biglow was familiar with both Abarca and Pizana.  Biglow frequently asked when deliveries would occur and made comments about which supplier he preferred.

Turning to the elements, the instruction to the jury[3] on the conspiracy count stated as follows:

> To find Biglow guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> First: two or more persons agreed to violate the federal drug laws;
>
> Second: Biglow knew the essential objective of the

---

[2] Andrews was unable to recollect whether Biglow was asking for two kilos or two "two-pieces."

[3] These elements are in accordance with Tenth Circuit law, supra at page 3, and Biglow has not challenged the instructions in his motion.

-4-

conspiracy[4];

>    Third: Biglow knowingly and voluntarily involved himself in the conspiracy;

>    Fourth: there was interdependence among the members of the conspiracy; and

>    Fifth: the overall scope of the conspiracy involved at least 500 grams of cocaine.

(Instruction No. 6).

Biglow first asserts that the evidence was not sufficient to establish beyond a reasonable doubt that he knowingly and voluntarily entered into an agreement to distribute cocaine with Andrews, thus challenging the first and third elements. The Tenth Circuit has held that the jury may infer an agreement from circumstantial evidence. United States v. Delgado-Uribe, 363 F.3d 1077, 1083 (10th Cir. 2004). Factors for the court to consider in reviewing a jury's verdict include, but are not limited to: "(1) a defendant's presence at the crime scene; (2) a defendant's association with co-conspirators; (3) evidence of conflicting stories; (4) active attempts to divert officers' attention from a stopped vehicle; (5) participation in drug transactions; or (6) knowledge of and control over drugs." Id. A single factor may be insufficient; however, a direct correlation exists "between the number of circumstantial facts and the existence of a conspiracy." Id.

In this case, the evidence supports more than one factor. There is substantial evidence to support a finding that Biglow had knowledge and possession of cocaine. Andrews testified that he sold Biglow

---

[4] Biglow does not challenge the sufficiency of the evidence on this element.

-5-

cocaine on two separate occasions and that Biglow desired to purchase large amounts of cocaine from Andrews. Moreover, Biglow went to the stash house to purchase cocaine from Andrews. The recorded calls also show that Biglow knew who Pizana and Abarca were and that he was familiar with the quality of their cocaine. Biglow also knew that he would not be supplied with cocaine until Pizana and/or Abarca delivered a supply to Andrews who in turn made the cocaine available to Biglow. The court finds that this evidence is sufficient to infer a knowing and voluntary agreement by Biglow to enter into a conspiracy with Andrews and Abarca and/or Pizana.[5] See United States v. Small, 423 F.3d 1164, 1184-85 (10th Cir. 2005)(evidence that supplier fronted cocaine to defendant and that defendant knew other individuals involved in the distribution sufficient to find a knowing and voluntary agreement and actions in furtherance of that agreement).

Next, Biglow contends that there was not sufficient evidence to support interdependence in this case. Interdependence is established when "each coconspirator's activities constitute essential and integral steps toward the realization of a common, illicit goal." United States v. Carter, 130 F.3d 1432, 1440 (10th Cir. 1997). Biglow asserts in his reply that there is no evidence that the coconspirators relied on each other for their success and mutual benefit and cites

---

[5] As discussed in a previous order, and further supported at trial, the evidence in this case supports a finding of a vertical conspiracy or a link and chain conspiracy in which Andrews, Biglow and Abarca and/or Pizana were members. (Doc. 850, p. 14). The evidence does not, however, support a finding of a "hub and spoke" conspiracy in which Biglow and other street level dealers, i.e. Black, are the spokes and Andrews is the wheel. Now that the court has determined a voluntary and knowing agreement, it must now turn to the remaining two elements.

to United States v. Caldwell, 589 F.3d 1323 (10th Cir. 2009). Caldwell, however, is factually different from this case. The jury in Caldwell found the defendant guilty of a tripartite conspiracy between the defendant, his supplier and another street level dealer. The evidence showed that the defendant introduced the other dealer to his supplier on one occasion. However, at the time of the introduction, the defendant was no longer involved in the sale of drugs. Therefore, the circuit held that the introduction was not sufficient to establish interdependence. The circuit, however, ultimately upheld the jury's verdict because there was evidence to support that the defendant was a member of a single conspiracy with his supplier at one time, concluding that the variance from the charged tripartite conspiracy was not prejudicial to the defendant. This case would be helpful to the court if the jury needed to rely on Black's involvement as part of Biglow's conspiracy. It does not. The instructions clearly differentiated between the two separate conspiracies.

    The evidence introduced at trial was sufficient to establish interdependence. Andrews testified that he fronted Biglow cocaine on the first sale. A "front" is when a dealer provides the cocaine up front and payment is expected after the buyer resells the drugs. Small, 423 F.3d at 1184. This "arrangement strongly suggests that [Biglow] was expected to redistribute the fronted drugs for profit." Id. This evidence is sufficient to satisfy the interdependence element. See United States v. Roberts, 14 F.3d 502, 511 (10th Cir. 1993) (recognizing that fronting creates a situation of mutual dependence because the seller's ability to front drugs is dependent

-7-

on his receipt of money due). Biglow, however, further argues that there is not interdependence between Biglow and Abarca and/or Pizana.

In <u>United States v. Ivy</u>, 83 F.3d 1266 (10th Cir. 1996), the Tenth Circuit dealt with a multi-player conspiracy in which the defendant was the street-level dealer. The defendant asserted that the evidence supported a conspiracy between the head of the conspiracy and the defendant's supplier but that there was no evidence to suggest that his minimal contact with his supplier, based on three to four purchases, could support an inference that he was a member of the conspiracy. The circuit disagreed. The circuit discussed the buyer-seller rule and determined that the evidence in the case supported the conclusion that the defendant was not a user but was purchasing the drugs for resale. The defendant also objected based on his lack of any interaction with the head of the conspiracy, the individual who provided the drugs to the defendant's supplier. The court did not find that significant in light of the evidence that the defendant's supplier was receiving his drugs from the individual who was considered the head of the conspiracy. Therefore, there was sufficient evidence to establish that the defendant was receiving the drugs from the head of the conspiracy.

As in this case, there is sufficient evidence that Biglow was not using the cocaine exclusively for his own personal use but rather reselling some or all of the drugs to his customers. Moreover, the evidence was that Andrews only received his cocaine from Pizana and Abarca. Biglow knew this. Biglow also had received cocaine from both suppliers and was familiar with the quality of the cocaine as evidenced from the phone calls. The evidence in this case, as in <u>Ivy</u>,

-8-

supports a finding of interdependence because the activities of the coconspirators, Biglow included, "facilitated the endeavors of other alleged conspirators or facilitated the venture as a whole." Ivy, 83 F.3d at 1286.

Finally, Biglow argues that the evidence was not sufficient to find beyond a reasonable doubt that the object of the conspiracy was to distribute 500 grams of cocaine because the evidence only established his involvement in less than 200 grams of cocaine. The Tenth Circuit, however, has held that Apprendi and Booker only require the jury to make a finding as to the amount of drugs for which the entire conspiracy is liable. United States v. Stiger, 413 F.3d 1185, 1192-93 (10th Cir. 2005). The circuit agreed with the majority of the circuits confronted with this issue and reasoned as follows:

> First, Apprendi held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490, 120 S. Ct. 2348. Second, in the conspiracy context, a finding of drug amounts for the conspiracy as a whole sets the maximum sentence that each coconspirator could be given. Derman, 298 F.3d at 42 (discussing Edwards v. United States, 523 U.S. 511, 118 S.Ct. 1475, 140 L.Ed.2d 703 (1998)). Because the subsequent attribution of drug amounts to individual coconspirators cannot increase their maximum sentence, "the judge lawfully may determine the drug quantity attributable to that defendant and sentence him accordingly (so long as the sentence falls within the statutory maximum made applicable by the jury's conspiracy-wide drug quantity determination)." Id. at 43.
>
> We agree with the reasoning of our sister circuits that Apprendi requires the jury only to set the "maximum sentence ([i.e., the] ceiling)" under which each coconspirator's sentence must fall. See Knight, 342 F.3d at 711. The judge, however, may determine the "floor" by finding the precise drug quantity attributable to each coconspirator. See id. The jury is not required to make individualized findings as to each coconspirator because "[t]he sentencing judge's findings do not, because they

> cannot, have the effect of increasing an individual defendant's exposure beyond the statutory maximum justified by the jury's guilty verdict." Id.

Stiger, 413 F.3d at 1192-93.

The phone calls between Biglow and Andrews show an intent by Biglow to engage in several transactions with Andrews, even though there was only specific evidence of the completion of the sale of 3 "two-pieces." Moreover, there was evidence that Biglow sought larger transactions with Andrews. Also, the evidence clearly supported a finding that Abarca and Pizana were supplying Andrews with several kilos[6] of cocaine every week. Therefore, the court finds that there was sufficient evidence to support a finding that the overall scope of the conspiracy involved at least 500 grams of cocaine. Biglow's arguments regarding his involvement in a smaller amount of cocaine go to the "floor" of the sentencing range and are more appropriate for the court's consideration at sentencing.

Biglow's motion for acquittal on the conspiracy count is accordingly denied.

**B.   Use of Communication Facility Counts**

Finally, Biglow asserts that three of the phone counts should be set aside because they did not result in any drug transaction. Biglow further contends that the remaining two counts should also be set aside because there is no evidence that the drug transaction was completed nor was there evidence to conclude that Biglow was planning to resell the cocaine. To find Biglow guilty of the phone counts, the jury was required to find that Biglow used a communication facility,

---

[6] One kilogram of cocaine is equivalent to one thousand grams of cocaine.

-10-

and, in doing so, Biglow committed, facilitated, or caused to be committed a drug felony. United States v. Acosta-Gallardo, 656 F.3d 1109, 1121 (10th Cir. 2011). A misdemeanor drug purchase cannot support an 843(b) offense. Id.

In this case, the underlying drug felony was a conspiracy. The Tenth Circuit has held that a crime of conspiracy qualifies as a drug felony that underlies a Section 843(b) offense. Id. (conspiracy is "the prototypical continuing offense")(citing United States v. Reed, 1 F.3d 1105, 1108–09 (10th Cir. 1993) ("[W]e hold that proof of an underlying inchoate crime, such as attempt or conspiracy under § 846, is sufficient to sustain a facilitation conviction under § 843(b)."))

The court has determined, supra, that sufficient evidence exists to support the guilty verdict on the conspiracy count. After a review of the transcript of the recorded calls and viewing the evidence in the light most favorable to the government, the court finds that sufficient evidence exists to support a finding that the calls were made in furtherance of the conspiracy. Biglow's motion for acquittal on the phone counts is therefore denied.

**C. New Trial**

In the alternative, Biglow requests a new trial on the basis that the verdicts are contrary to the weight of the evidence. (Doc. 885 at 8). The court disagrees for the reasons stated in this order, supra.

**III. Conclusion**

Biglow's motion for acquittal or, in the alternative, for a new trial is denied. (Doc. 884).

IT IS SO ORDERED.

Dated this __1st__ day of August 2012, at Wichita, Kansas.

                                              s/ Monti Belot
                                              Monti L. Belot
                                              UNITED STATES DISTRICT JUDGE